HIGGINBOTHAM, J.
 

 |2Robb Harrelson appeals from an amended judgment of the Workers’ Compensation Judge (WCJ) denying Harrel-son’s motion for penalties and attorney fees arising out of his employer’s alleged failure to timely fund the Medicare Set>Aside (MSA) account portion of the parties’ settlement agreement. For the reasons set forth, we affirm the amended judgment.
 
 [1]
 

 FACTS
 

 On August 24, 2004, Harrelson injured his shoulder while working for Bestaff Arcadia (Bestaff). Harrelson and Bestaff eventually entered into a full and final settlement agreement where Bestaff agreed to pay Harrelson $125,000.00, with $42,010.00 of that amount to be placed in a MSA account to cover future medical expenses and $82,990.00 to be paid in one lump sum. The parties filed a joint petition for settlement that contained a paragraph outlining the terms of the MSA portion of the settlement as follows:
 

 [Bestaff] and insurer agree that,
 
 if CMS
 
 [the Centers for Medicare & Medicaid Services]
 
 requires that additional money he placed into the [MSA] in this case,
 
 [Bestaff]/insurer
 
 will, at its option, pay all such additional amounts
 
 and comply with all Medicare requirements regarding such,
 
 or will withdraw the proposal for a [MSA],
 
 and the claim for future medical care will remain open. (Emphasis added.)
 

 On December 10, 2009, the WCJ entered an order approving the parties’ joint petition and settlement agreement. The order specifically provided that Harrelson “shall recover from [Bestaff] in solido the amount of $125,000.00 with $42,010.00 of this amount
 
 being placed in a MSA
 
 for future medical treatment relative to the August 24, 2004 accident[.]” (Emphasis added.) The WCJ also ordered Harrelson to execute a receipt and release to Rbecome “effective upon negotiation of the settlement funds” by Harrelson or his attorney. Additionally, the WCJ signed a separate order dismissing Harrelson’s litigation on December 10, 2009.
 

 Bestaff immediately submitted a settlement check in the amount of $82,990.00 to Harrelson, with assurances that the balance of $42,010.00 for the MSA funding would be “forwarded shortly.” CMS received Bestaffs insurance adjusting company’s MSA proposal on December 27, 2009, but did not approve the $42,010.00 MSA amount until January 27, 2010. After Bestaff received notice of CMS’s approval, Bestaff issued a check for the balance of the funds to Harrelson a few days later on February 2, 2010.
 

 Harrelson filed a motion to enforce the settlement judgment on February 25, 2010, asserting that he was due statutory
 
 *665
 
 penalties and attorney fees pursuant to LSA-R.S. 23:1201 G,
 
 [2]
 
 because Bestaff failed to pay the full amount of the settlement within thirty days of the final, nonap-pealable judgment. Bestaff opposed the motion, maintaining that the MSA portion of the settlement agreement contained a valid suspensive condition that prevented the judgment from being enforced until the uncertain event of CMS’s approval of the actual MSA funding amount occurred.
 
 [3]
 
 Bestaff 14argued that payment of the MSA funding could not have occurred prior to CMS’s approval, which was an uncertain event and the timing of the approval was completely out of Bestaffs control. Further, Bestaff asserted that it timely paid Harrelson the $42,010.00 MSA funds within thirty days after it received approval of the funds from CMS. At the May 14, 2010 hearing on Harrelson’s motion, the parties submitted the matter to the WCJ on briefs, and the matter was taken under advisement.
 

 On June 9, 2010, in an amended final judgment, the WCJ denied Harrel-son’s motion requesting penalties and attorney fees for Bestaffs failure to timely fund the MSA portion of the settlement agreement. The WCJ concluded that Bes-taff had not violated LSA-R.S. 23:1201 G, and issued written reasons finding that the settlement agreement between the parties clearly contained a suspensive condition regarding whether to fund the MSA amount of $42,010.00. The WCJ reasoned that the settlement agreement’s suspen-sive condition must be honored even though the final order/judgment approving the settlement did not expressly track the suspensive condition language contained in the actual settlement agreement. Harrel-son appeals, asserting the WCJ erred in failing to assess the statutory penalties and attorney fees. Harrelson also requests additional attorney fees, costs, and interest for this appeal.
 
 [4]
 

 STANDARD OF REVIEW
 

 In workers’ compensation cases, our standard of review to be applied to findings of fact is the manifest error-clearly wrong standard.
 
 Dean v. Southmark Construction,
 
 03-1051 (La.7/6/04), 879 So.2d 112, 117. However, when legal error interdicts the fact-finding process in a
 
 *666
 
 workers’ compensation proceeding, the
 
 de novo
 
 standard of review applies.
 
 Brantley v. Delta Ridge Implement, Inc.,
 
 41,190 (La.App.2d Cir.6/28/06), 935 So.2d 308, 314. We also use the
 
 de novo
 
 standard of review for determining if the WCJ was legally correct when interpreting statutes pertaining to workers’ compensation, because the interpretation of a statute is a question of law.
 
 Lirette v. Patterson Services, Inc.,
 
 05-2654 (La.App. 1st Cir.11/17/06), 951 So.2d 223, 226. This case involves the interpretation of a statute and the determination of whether that statute was violated; thus, we review
 
 de novo
 
 the WCJ’s statutory interpretation, while using the manifest error standard of review for the WCJ’s factual findings regarding any statutory violation.
 
 [5]
 

 ANALYSIS
 

 The WCJ essentially held that the order approving the settlement agreement between the parties was subject to the requirement that a MSA account be funded, which at the time of the order had not been approved by CMS. We agree and find no manifest or legal error with this finding. The record contains correspondence from CMS to the insurance adjusting company on behalf of Bestaff dated January 27, 2010. That letter provided in bold-face type: “Approval of this [MSA] is
 
 not effective until a copy of the fínal executed workers’ compensation settlement agreement,
 
 which must include this approved IMSAJ amount,
 
 is received by CMS
 
 at the following address.” (Emphasis added.) Shortly after CMS’s approval letter was | (¡received, the check for the $42,010.00 MSA amount was issued to Harrelson, well within thirty days of the occurrence of the suspensive condition, which was CMS’s approval. The approval by CMS was an uncertain event that once it occurred made the WCJ’s order approving the entire settlement agreement final and enforceable. In other words, the right to enforce Bestaffs conditional obligation to fund the MSA account contained in the settlement agreement did not arise until the fulfillment of the suspensive condition when CMS approved the MSA funding. The settlement agreement simply could not be enforced until the suspensive condition was met.
 
 See
 
 LSA-C.C. art. 1767.
 
 See also Hampton, Inc. v. Hampton,
 
 97-1779 (La.App. 1st Cir.6/29/98), 713 So.2d 1185, 1190;
 
 Washington National Ins. Co. v. Brown,
 
 94-1346 (La.App. 1st Cir.4/7/95), 654 So.2d 724, 728 n. 4. Further, based upon our review of the settlement agreement, there is no language, express or otherwise, that compels us to construe it as requiring Bes-taff to pay the MSA funds prior to CMS approval.
 

 Additionally, we find that the timing of this uncertain event — CMS approval — was completely out of Bestaffs control since the payment of the MSA funds was entirely dependent upon whether CMS approved the funding. The record indicates that Bestaffs $42,010.00 proposal for funding the MSA account was received well within thirty days from the WCJ’s order approving the settlement agreement. However, CMS did not approve the request until a month later. Furthermore, even if we assumed arguendo that the WCJ’s order approving the parties’ settlement agreement with a suspensive condition was a final and nonappealable judgment on the day it was signed by the WCJ, we conclude that penalties for nonpayment within thirty days
 
 *667
 
 are not owed in this instance because Bes-taffs nonpayment was the result of “conditions over |7which the employer had no control.”
 
 See
 
 LSA-R.S. 23:1201 G.
 
 [6]
 
 Therefore, for this additional reason, we find that the WCJ did not err in denying statutory penalties and attorney fees in this case.
 
 [7]
 

 CONCLUSION
 

 For the outlined reasons, we grant Bes-taffs motion to strike portions of Harrel-son’s brief referencing comments that are not contained in the appellate record. We affirm the WCJ’s amended judgment denying statutory penalties and attorney fees in this case, and we deny Harrelson’s request for additional attorney fees for this appeal. All costs of this appeal are assessed to Robb Harrelson.
 

 MOTION TO STRIKE GRANTED; AMENDED JUDGMENT AFFIRMED.
 

 [1]
 

 . A final judgment may be amended by the trial court at any time to alter the phraseology of the judgment, but not the substance.
 
 See
 
 LSA-C.C.P. art. 1951(1). It is undisputed, and we agree, that the amended judgment in this case merely altered the phraseology, not the substance, of the original judgment issued the previous day.
 

 [2]
 

 . Louisiana Revised Statutes 23:1201 G provides, in pertinent part:
 

 If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, ... unless such nonpayment results from conditions over which the employer had no control.... The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate. (Emphasis added.)
 

 [3]
 

 . Suspensive conditions are provided for in LSA-C.C. art. 1767, which states in part:
 

 A conditional obligation is one dependent on an uncertain event.
 

 If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
 

 [4]
 

 .Bestaff filed a motion in this court to strike comments contained in Harrelson’s brief that are not found in the record. An appellate court must render its judgment upon the record on appeal.
 
 See
 
 LSA-C.C.P. art. 2164. Arguments of counsel contained in appellate briefs and references to facts and issues that are not currently before the court are not considered record evidence.
 
 In re Succession of Badeaux,
 
 08-1085 (La.App. 1st Cir.3/27/09), 12 So.3d 348, 352,
 
 writ denied,
 
 09-0822 (La.5/29/09), 9 So.3d 166. Consequently, to the extent that Harrelson's brief references comments and facts that are not part of the appellate record before us, Bestaffs motion to strike is granted.
 

 [5]
 

 .
 
 See Hayes v. Louisiana State Penitentiary,
 
 06-0553 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 563-564,
 
 writ denied,
 
 07-2258 (La.1/25/08), 973 So.2d 758, where we held that the determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the trial court’s finding shall not be disturbed absent manifest error.
 

 [6]
 

 . The parties do not dispute, and we agree, that LSA-R.S. 23:1201 G applies to nonpayment of awards payable under the terms of consent judgments or settlement agreements that cannot be appealed.
 
 See Trahan v. Coca Cola Bottling Co. United, Inc.,
 
 04-0100 (La.3/2/05), 894 So.2d 1096, 1108-1109;
 
 Sims v. BFI Waste Services, L.L.C.,
 
 06-1319 (La.App. 1st Cir.5/16/07), 964 So.2d 998, 1005. The question is when the settlement agreement becomes final and nonappealable. As previously discussed, we find that the settlement agreement was not enforceable until the separate uncertain event of the MSA funding approval occurred.
 

 [7]
 

 . We are aware that the Fourth Circuit has held in
 
 MacFarlane v. Schneider Nat. Bulk Carriers, Inc.,
 
 07-1386 (La.App. 4th Cir.4/30/08), 984 So.2d 185, 191, that the wording of LSA-R.S. 23:1201 G expressly provides that "any award payable under the terms of a final, nonappealable judgment” makes no exceptions or limitations with respect to MSA funding. However, we find the
 
 MacFarlane
 
 case distinguishable in that CMS’s approval of the MSA funding was apparently not an issue in that case. The facts and procedural history outlined in
 
 MacFar-lane,
 
 state that "[t]he settlement agreement also provided that [the employer] was to provide tier funding of a
 
 previously established Medicare Set-Aside account (“MSA”),
 
 which was to be funded by an initial lump sum payment[.]”
 
 Id.,
 
 984 So.2d at 187. (Emphasis added.) The Fourth Circuit specifically held that there was "no dispute that [the employer] was required to fund the MSA in the amount of [the initial lump sum payment].”
 
 Id.,
 
 984 So.2d at 191. Therefore, in
 
 MacFarlane,
 
 the employer's initial lump sum payment for funding the MSA was due within thirty days of the WCJ's order approving the joint petition for settlement and compromise, and penalties and attorney fees were appropriate since the funding took place after the required thirty days.